IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 3, 2013

## WILLIE LEWIS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 08-01047      Jim Lammey, Jr., Judge**

**No. W2012-02003-CCA-R3-PC  - Filed March 5, 2014**

Petitioner, Willie Lewis, was convicted by a Shelby County jury of aggravated robbery and sentenced by the trial court as a career offender to thirty years in the Tennessee Department of Correction.  *See State v. Willie Lewis*, No. W2008-02636-CCA-R3-CD, 2010 WL 1267070 (Tenn. Crim. App., March 31, 2010), *perm. app. denied* (Tenn., Sept. 3, 2010). Petitioner appeals the post-conviction court's denial of his petition for post conviction relief, asserting that his trial counsel was ineffective for failing to inform him of the applicable sentencing range and failing to investigate his criminal record.  Petitioner contends that but for counsel's errors, he would not have proceeded to trial but would have accepted the State's plea offer.  Finding no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, and JEFFREY S. BIVINS, JJ., joined.

Veronica R. Cooper, Memphis, Tennessee, for the appellant, Willie Lewis.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jessica Banti, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

*Facts*

The facts underlying Petitioner's aggravated robbery conviction were summarized in this court's opinion on direct appeal.  *See id*.  In short, the victim was talking to his neighbor on his neighbor's front porch when Petitioner, whom the victim recognized from having

lived in the same neighborhood for 20 years, approached the victim and pulled a double-barreled, sawed off shotgun out of a bag and demanded the victim's money. Petitioner fired a shot into the ground and pointed the gun at the victim. Petitioner hit the victim in the head twice with the gun, and the victim and Petitioner began to scuffle. Petitioner took the victim's wallet containing $240 and walked away. The victim was taken by ambulance to the hospital. While in the ambulance, the victim saw Petitioner and informed paramedics. Police detained Petitioner and brought him to the ambulance for the victim to identify. The victim identified Petitioner as the person who robbed him. A witness who lived near the victim testified that after he heard a loud boom, he stepped out on his porch. He saw the victim being carried to the ambulance. He testified that he saw Petitioner at the corner store drinking beer with some other people. He testified that he did not tell police that he saw Petitioner at the store at the time of the robbery because "he thought it better not to get involved." Petitioner testified that he was at the corner store drinking beer with friends at the time of the robbery and denied seeing or robbing the victim. Petitioner testified that he also heard the loud boom and looked down the street, but did not see anything. Shortly thereafter, police took Petitioner into custody. Petitioner denied being taken to the back of the ambulance for the victim to identify him. *State v. Willie Lewis*, 2010 WL 1267070, at *1-3.

*Post-conviction hearing*

At the evidentiary hearing, Petitioner testified that he met with trial counsel "several times" to discuss his case. Petitioner met with counsel during various court appearances, and counsel met with Petitioner at the jail on the day before trial. Petitioner testified that if counsel provided him with discovery material, he "didn't know what it was. . . she didn't let [him] know nothin[g]." He testified that he and counsel "had a misunderstanding about everything." Petitioner testified that counsel "was trying – mostly what she was doing, trying to get me to take them [sic] eight years. That's what mostly she was talking about." He testified that trial counsel did not meet with him prior to his sentencing hearing. Petitioner testified that he was told by the trial court that the sentencing range was 12 to 20 years, and he was not advised by trial counsel or the trial court that he could be sentenced as a career offender. He testified that he did not accept the State's offer of an eight-year sentence because he was not guilty of the offense. Petitioner testified that he would have accepted the State's plea offer if he knew he could have been sentenced to 30 years to be served at 60 percent release eligibility.

On cross-examination, Petitioner testified, "I wasn't gonna never [sic] plead guilty. That's the reason I went to trial. I ain't [sic] had no intentions on pleading guilty." Petitioner also testified that had he known that he could be sentenced to 30 years to be served at 60 percent, he would have accepted the State's plea offer because "there wasn't no way out." He testified that he was never shown or told about the State's filing of a notice of enhanced

punishment, which identified Petitioner as a career offender. Petitioner testified that he knew he had five prior convictions for aggravated robbery in 1981 or 1982.

Trial counsel was employed by the Shelby County public defender's office. She was appointed to represent Petitioner. She testified that she mailed a copy of the indictment and discovery responses to Petitioner in jail. She testified that two investigations were performed by the public defender's office while Petitioner's case was pending and that investigators made attempts to locate witnesses based on Petitioner's descriptions of the individuals. Trial counsel testified that one of the witnesses subpoenaed to testify for the defense called her on the day of trial, "and he was, obviously, drunk."

She testified that Petitioner made it clear to her that he wanted to proceed to trial. At the time of the State's initial plea offer, trial counsel believed that Petitioner was a Range II offender. She received a notice from the State ten days prior to trial that Petitioner was actually a career offender. Counsel could not specifically recall advising Petitioner of the State's notice and his career offender status, but she testified, "that may have been the only reason for me to have brought him up [to court to meet with him] once [his case] had been set for trial." Regarding whether counsel advised Petitioner of his status as a career offender, counsel testified, "I can't guarantee, for sure, I did. You know, and I don't know that I did. He made it clear, from the very beginning, all he wanted was a trial." She testified that Petitioner did not inform her that he had five prior aggravated robbery convictions.

During a hearing at which a trial date was set in Petitioner's case, the trial court conducted a "voir dire" of Petitioner. A transcript of that hearing shows that Petitioner indicated that he wanted to proceed to trial. The trial judge explained that Petitioner's case was set for trial in six weeks and that the trial court would not accept a plea agreement after the day of the "voir dire" of Petitioner. Petitioner acknowledged that he understood. The trial judge read the facts of the case as alleged in the affidavit and explained to Petitioner that the State's witnesses would testify against him. The trial judge then explained Petitioner's potential punishment:

> THE COURT: Okay. And if you're convicted, what would your punishment be, [Petitioner]? What are you looking at as far as punishment, do you know?
>
> [PETITIONER]: My understanding?
>
> THE COURT: Yes, sir. What would your punishment be if you – I'm not saying you'll be convicted. If you were, what kind of punishment would you be looking at?

[PETITIONER]: (No audible response.)

THE COURT: If you were sentenced? You know, if you're convicted? If the jury believes the victim and the witnesses and they find you guilty of aggravated robbery, what would your punishment be?

[PETITIONER]: Probably about ten years.

THE COURT: No, no. See you have – the State's filed this notice. This could be lies, but they filed a notice that you've got two class-B felony convictions and five more before you committed the robbery is what they're saying. I'm not saying you did anything. So if you're – if you have these two B-felony convictions and other ones, you'd be at least range two. So the minimum sentence you could get, if that's true, is twelve years. So you would be looking –

Would he be range two or range three, what is the State saying?

[PROSECUTOR]: Your Honor, I do not have that file up here.

THE COURT: Okay. Well, it depends on whether these others [are] E's or D's.

But you're looking at somewhere between twelve and twenty years. In other words, I couldn't sentence you less than twelve if you have those two prior B's. I'm just telling you what the law is, and I'm not saying you would be convicted. I'm not saying you have these two B-felony convictions. The State – if you're convicted, the State will have to prove those to me in the courtroom. Okay. [Defense counsel] will be allowed to cross-examine. But I want to make sure you understand that you're looking at somewhere between twelve and twenty years in the state pen if you have these two B-felony convictions, forgetting

-4-

about all the others. Any other felony convictions would enhance your sentence within the range.

I just want to make sure – if you have any questions about that, you can ask me.

[PETITIONER]:    Yeah. You say I have two B-felony?

THE COURT:    No, no, I didn't say that. The State filed a notice saying that you have two B-felonies and five more felony convictions that are D's or E's.

The trial court then explained again that the State would be required to present proof of Petitioner's prior convictions at a sentencing hearing, and that if Petitioner was classified as a Range II multiple offender, he could be sentenced to 12 to 20 years. Defendant responded, "Yes, sir, I think I understand it pretty well."

At the conclusion of the evidentiary hearing, the post-conviction court found as follows:

I don't see where [trial counsel] made any mistakes. The defendant here claims that she knew that he had these prior convictions; and she said, "No, I didn't know that."

. . . .

So, anyway, you know, assuming that she did know, it would have been ineffective to tip the state off because, for the record, prior to the new system they have now that came into existence in 1982 – prior to that, all convictions do not show up on JSS [a conviction history database]. So, if the state doesn't find those prior convictions, then the defendant is pretty lucky; and that's basically what he was trying to do – basically is what it appears to me to be – was try to take advantage of the fact that the state wasn't aware. Of course, they found out, after the case was set for trial, that he was, in fact Range III – I mean, career. So, it's not the [trial] judge's fault; and it's not his lawyer's fault that he was, in fact career. So, I don't see what she did wrong at all – at trial – in cross-examining the witnesses – I mean, he must show that her errors were so serious as to deprive him of effective assistance of counsel. And I don't think he's met that first part of *Strickland*.

-5-

Assuming, for argument sake, maybe she should have done an in-depth look at his record beforehand and tipped the DA off that he was, in fact, career, by some stretch of the imagination, that would have been what she should have done – I don't know. But I don't think that her performance prejudiced the defendant in any way. In fact, she was trying to do – she got him an eight-year offer. She got him an eight-year offer. He was career, and he knew he was career. He's had several convictions since for these aggravated robbery – robbery with a deadly weapon offenses that he had back in the early 80's. He had several convictions.

. . . .

I don't see how [trial counsel] – how it could be alleged that she was ineffective at all. And I – I don't believe what [Petitioner] had to say. I believe everything [trial counsel] had to say. She did everything within her power – and I could see why she would be mad that he wouldn't have taken the eight years – even thinking that he was Range II . . . . At any rate, I'm not going to second-guess her tactical decisions that she made. I believe her. I do not believe [Petitioner]. And so I'm going to deny this petition for post-conviction relief.

A subsequent written order denying post-conviction relief incorporated the trial court's findings of fact and conclusions of law.

*Analysis*

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial

counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

As noted above, this court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id*. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, a petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. 1994). This court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id*. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Petitioner asserts that trial counsel was ineffective for failing to investigate his criminal history and for failing to inform him of his correct sentencing range. Petitioner relies upon the decision of the United States Supreme Court in *Lafler v. Cooper*, ___ U.S. ___, 132 S. Ct. 1376 (2012). The Supreme Court in *Lafler* held that the petitioner was prejudiced by his trial counsel's deficient performance in advising him to reject a plea offer and proceed to trial when the petitioner received a harsher sentence following trial than he had been offered in exchange for a guilty plea. 132 S. Ct. at 1390-91. Lafler was charged under Michigan law with assault with intent to commit murder and three other offenses. The prosecution offered to dismiss two of the charges and to recommend a sentence of 51 to 85 months. Lafler had initially expressed a willingness to accept the prosecution's offer, but he rejected the offer after his trial counsel convinced him that the prosecution would be unable to prove intent to murder. At trial, he was convicted on all four counts and received a mandatory minimum sentence of 185 to 360 months. *Id*.

The facts of this case are clearly distinguishable from *Lafler* in that Petitioner never expressed a willingness to accept the State's plea offer. In fact, Petitioner testified at the post-conviction hearing that he "had no intentions [of] pleading guilty" and that trial counsel actually encouraged him to accept the State's eight-year plea offer. Trial counsel also testified that Petitioner expressed a desire to go to trial "from the very beginning[.]"

Regarding trial counsel's alleged failure to investigate Petitioner's criminal record, trial counsel testified at the post-conviction hearing that the information provided to her by the State indicated that Petitioner was a Range II multiple offender, "and that's certainly what the MVU worksheet indicated; that he was just Range II; and that was all we had at that point." She testified that she did not believe Petitioner's convictions would have been revealed by the "JSS" database to which investigators for the public defender's office had access. She also testified, "[Petitioner] certainly didn't tell me that he had all these when we talked about his background."

In his brief, Petitioner "submits that if the state's investigator could find these convictions so could the trail [sic] attorney." However, Petitioner presented no proof at the post-conviction hearing that trial counsel had access to any information other than what trial counsel testified she had. The post-conviction court accredited trial counsel's testimony and discredited Petitioner's testimony where it contradicted trial counsel's testimony. Moreover, Petitioner acknowledged at the post-conviction hearing that he did not inform trial counsel of the prior convictions, and interestingly, when asked by the post-conviction court whether Petitioner told trial counsel that he had five prior aggravated robbery convictions, Petitioner replied, "She knew." Petitioner has not established that trial counsel's performance was deficient for failing to discover his prior convictions.

For the foregoing reasons, we affirm the judgment of the post-conviction court.


_____
THOMAS T. WOODALL, JUDGE